854 F.2d 1316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles DORSEY, Plaintiff-Appellant,
v.
STATE OF MARYLAND, DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES, Merry Coplin, Maryland Reception
Diagnostic and Classification Center, Jo Ann Hardnett,
Department of Public Safety and Correctional Services, John
G. Sybert, Department of Public Safety and Correctional
Services, Theodore Thornton, Secretary of Department of
Personnel, Defendants-Appellees.
 No. 87-2220.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1988.
Decided Aug. 2, 1988.
 
 Fred Scott Hecker, Alexander Stark for appellant.
 Alan Douglas Eason, George A. Eichhorn, III, Assistant Attorneys General (Department of Public Safety and Correctional Services, J. Joseph Curran, Attorney General on brief) for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and ERVIN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 On October 27, 1983, plaintiff-appellant Charles Dorsey experienced a religious vision while working as a Maryland correctional officer. He was suspended pending evaluation, and when his sick leave expired, termination proceeding began. Through the statutory grievance process, he was reinstated with full back pay on November 29, 1984. In the interim, Dorsey filed this action. On January 29, 1987, the district court dismissed his pendent state claims, and on October 21, 1987, the court granted summary judgment for the state and individual defendants on his federal claims. We affirm.
 
 
 2
 Dorsey had his vision while transporting prisoners. His partner, Officer West, returned to the van after escorting a prisoner into court and found him staring out the window at the sky. After several minutes, Dorsey reported seeing a beautiful, fantastic vision that was religious in nature. West drove back to their center because Dorsey was excited and visibly shaking. Upon arrival, Dorsey walked to the street corner to see if the vision would reoccur and then went inside. There, Major Eric Swinn observed him staggering and asked if anything was wrong. Dorsey told him nothing was wrong and that Swinn would not understand what he had experienced. A physician's assistant found that he was perspiring and distraught, and Swinn told him to go home for the rest of the day.
 
 
 3
 The next day Dorsey called in sick, and when he came in the following Monday, Security Chief Joseph Wilson had him go to a counseling interview through the Employee Assistance Unit of the Maryland State Department of Personnel (EAU). Based on advice from an EAU staff member, Warden Merry Coplin put Dorsey on sick leave pending examination by Dr. Peter Oroszlan, the State Medical Director. Dr. Oroszlan wrote Coplin that Dorsey "could be having hallucinations," and when he met with Dorsey on November 15, 1983, he found him to be angry and uncooperative. Coplin denied his grievance based on a "no discrimination" finding by a state EEOC officer, and Dorsey continued to be on sick leave. Finally, at the fifth step of the grievance procedure, a hearing officer ordered a full scale hearing.
 
 
 4
 In the meantime, Dorsey exhausted his sick leave, and Coplin brought charges for his removal. Dorsey was not terminated. Instead, on November 29, 1984, Secretary of Personnel John O'Brien restored him to duty with full back pay and benefits from October 31, 1983, the Monday following the incident, because of "the unfair and improper manner in which Officer Dorsey was treated by the Department."
 
 
 5
 Dorsey, however, had already instituted this action on May 25, 1984. He asserted religious discrimination claims under Title VII and the first amendment, procedural due process violations, and several pendent state claims. The district court dismissed the state claims on January 29, 1987, but refused to rule on the federal claims. After discovery, the court granted summary judgment for the defendants on the federal claims as well. Dorsey appeals.
 
 
 6
 Under Title VII, a prima facie case of discrimination creates an inference of unlawful discrimination which can be rebutted by the articulation of "some legitimate, nondiscriminatory reason" for the action involved. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). The plaintiff can then show that the articulated reason is a mere pretext for an improperly motivated decision. Id. at 804. Within this framework the ultimate burden of persuasion remains on the plaintiff to prove intentional discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).
 
 
 7
 For our purposes, we assume that Dorsey established a prima facie case of religious discrimination. However, the defendants countered with a legitimate nondiscriminatory reason--Warden Coplin's reliance on medical evidence regarding Dorsey's lack of fitness. There is no evidence to suggest that this reason was pretextual, so there is no genuine issue of material fact as to Dorsey's Title VII claim.
 
 
 8
 Dorsey also argues that there was a violation of 42 U.S.C. Sec. 1983 based on a violation of his procedural due process rights.[1] Although Maryland provides a statutory grievance procedure with hearings at each step, Dorsey did not get a hearing until the fifth step of the procedure. Whatever deprivation this may have constituted, however, was cured when the Secretary of Personnel reinstated him with full back pay. Postdeprivation remedies can satisfy due process requirements. Parratt v. Taylor, 451 U.S. 527, 538 (1981). Although additional relief, including attorney fees, would be available under Sec. 1983, Dorsey got meaningful relief sufficient to satisfy due process. Id. at 544. Therefore, summary judgment on his Sec. 1983 claim was appropriate.[2]
 
 
 9
 Given that his federal claims were disposed of properly on summary judgment, dismissal of the pendent state law claims was also proper. See United Mine Workers v. Gibbs, 383 U.S. 715, 725-27 (1966). We also find no error in the delay from the filing of this action in 1984 to the granting of summary judgment in 1987. While such delays are regrettable, Dorsey shows no prejudice arising from this delay. We affirm the district court's order of summary judgment for the defendants.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Below, Dorsey also asserted a Sec. 1983 violation based on religious discrimination. This claim was not argued on appeal, so it is deemed to have been waived. Even on the merits, however, it would have the same shortcomings found in his Title VII claim. There is simply no evidence of religious discrimination
 
 
 [2]
 Dorsey argues that partial summary judgment in his favor on the due process claim is appropriate based on the Secretary's finding of "the unfair and improper manner" in which he was treated. Ordinarily, a state administrative finding does not bind another adjudicator seeking to determine an apparently identical issue. See Cicala v. Benefits Review Bd. of Prince George's Cty., 288 Md. 254, 418 A.2d 205, 211-12 (1980). Therefore, the Secretary's finding of unfairness does not control the federal courts' due process determination